# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pardis Zainulabadin, | No. CV 17-01987-PHX-JAT (DMF) |
| Plaintiff, | |
| v. | **ORDER** |
| Arizona Department of Corrections, et al., | |
| Defendants. | |

Plaintiff Pardis Zainulabadin, who is currently confined in the Arizona State Prison Complex (ASPC)-Eyman, Meadows Unit in Florence, Arizona brought this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 8.) Before the Court are Defendants Kent and Ryan's Motion for Summary Judgment (Doc. 82) and Defendants GEO, Riddell, Coday, and Ryan's ("GEO Defendants") Motion for Summary Judgment (Doc. 84), which Plaintiff opposes (Docs. 89, 90).[1]

The Court will grant Defendants Ryan and Kent's Motion for Summary Judgment, grant GEO Defendants' Motion for Summary Judgment, and terminate the action.[2]

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 59.)

[2] GEO Defendants move to strike Plaintiff's untimely Amended Response (Doc. 93) and Statement of Facts (Doc. 94), which were filed without the Court's leave and more than a month after Plaintiff's deadline to respond to GEO Defendants' Motion for Summary Judgment had expired. In his Amended Response, Plaintiff states that he "hopes that the Court accepts [his] late answer to the defendant's [sic] statement of fact due to being unexperience [sic] in the civil or any legal rules and procedure." (Doc. 93 at 1.) The Court is unpersuaded by Plaintiff's statement as he was given detailed instructions

## I. Background

On screening of Plaintiff's First Amended Complaint (Doc. 8) under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated the following claims: (1) religious exercise claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), the First Amendment, and article 2 section 12 of the Arizona Constitution against Defendants GEO Group, Inc., GEO Officer Riddell, Arizona Department of Corrections (ADC) Disciplinary Officers John Doe and Jane Doe, ADC Director Ryan, and ADC Deputy Warden Coday[3] in Count One; and (2) a Fourteenth Amendment equal protection claim against Defendants ADC Corrections Officer (CO) II Kent and Ryan in Count Two. The Court directed these Defendants to answer the respective claims against them and dismissed the remaining claims and Defendants. (Docs. 6, 32.) The Court did not order service on the Doe Defendants at this time. (Doc. 6 at 12.)

GEO Defendants move for summary judgment on Plaintiff's claim in Count One on the grounds that he failed to exhaust the available administrative remedies and that the claim fails on the merits. (Doc. 84.) Defendants Kent and Ryan move for summary judgment on the merits of Plaintiff's claim in Count Two, and in the alternative, argue that they are entitled to qualified immunity. (Doc. 82.)

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying

---

regarding the requirements of his response to the Motions for Summary Judgment (*see* Docs. 86, 87), and Plaintiff understood the Court's instructions well enough to file a timely Statement of Facts and a Declaration in response to Defendants Ryan and Kent's Motion for Summary Judgment. (*See* Doc. 89 at 14–26.) Accordingly, the Court will grant Defendants' Motion to Strike and have Plaintiff's untimely responses stricken from the record.

[3] Plaintiff spelled Defendant's name "Cody" in the First Amended Complaint. (Doc. 8.) The Court will refer to Defendant with the spelling used by Defendants in the Motion for Summary Judgment.

those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III. GEO Defendants' Motion for Summary Judgment**

In Count One of the First Amended Complaint, Plaintiff alleges that his religious exercise rights were violated when he was placed on disciplinary report for missing mandatory orientation in order to attend a religious service on April 8, 2016. (Doc. 8 at 7.)

**A. Exhaustion Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926,

934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

**B.    Relevant Facts**

**1.    Grievance Procedure**

The Arizona Department of Corrections (ADC) has adopted Department Order (DO) 802 to address prisoners' complaints regarding their conditions of confinement. (Doc. 85 (GEO Defs.' Statement of Facts) ¶ 9.)

Under the version of DO 802 that was in effect when Plaintiff's claim arose, prisoners must first attempt to resolve their complaints through informal means, such as discussing the issue with staff or submitting an Inmate Informal Complaint Resolution Form to their unit Correctional Officer (CO) III. (*Id*. ¶¶ 10–11.) The Informal Complaint must be submitted within ten days from the date of the incident that gave rise to the grievance. (Doc. 85-1 at 14 (DO 802.02 § 1.2).) The CO III has 15 workdays to respond to the Informal Complaint. (*Id.* (DO 802.02 § 1.3.2).)[4] If the prisoner is unable to resolve the issue informally, the prisoner may submit a Formal Grievance to the unit CO IV Grievance Coordinator, who will log the grievance and forward it to the Deputy Warden for response. (Doc. 85 ¶¶ 14–15.)

If the prisoner is not satisfied with the Deputy Warden's response, the prisoner may submit a Grievance Appeal to the ADC Director. (*Id*. ¶ 16.) The Director's decision is final and constitutes completion of the grievance process. (*Id*. ¶ 17.)

If a prisoner does not receive a timely response from the designated prison official at any point during the grievance process, the prisoner may proceed to the next stage of the grievance process the day after the response was due. (Doc. 85-1 at 13 (DO 802.01 § 1.10.1).)

### 2. Plaintiff's Grievance History

On April 10, 2016, Plaintiff submitted an Inmate Letter to Defendant Coday complaining about the April 8, 2016 incident. (Doc. 90 at 14.) On May 9, 2016, Plaintiff submitted another Inmate Letter regarding the April 8, 2016 incident. (Doc. 90 at 16.) The following day, Plaintiff submitted an Informal Complaint regarding the April 8, 2016 incident. (*Id.* at 20.) In a May 16, 2016 Inmate Letter Response, Plaintiff was informed that his May 9, 2016 Inmate Letter was submitted outside of the 10-day timeframe under DO 802.02. (*Id.* at 18.) In a June 2, 2016 Informal Complaint Response, Plaintiff was

---

[4] According to the ADC's Glossary of Terms, for the purposes of DO 802, "a workday is Monday through Friday, 8:00 A.M. to 5:00 P.M." (*See* https://corrections.az.gov/sites/default/files/policies/glossary_of_terms_72219.pdf (definition for "workday" in reference to DO 802) (last visited Aug. 1, 2019).

informed that his Informal Complaint was untimely. (*Id.* at 22.) On June 19, 2016, Plaintiff submitted an Inmate Letter to Chaplain Wells which stated: "I am requesting the Chaplain's expert idea on the importance of religion. What is import[ant] to attend according to DOC[,] classes or religious service?" (*Id.* at 24.)

### C. Discussion

Defendants have met their initial burden at summary judgment of showing that there was an administrative remedy available to Plaintiff as outlined in DO 802 and that Plaintiff did not complete this process with regard to his claim in Count One against GEO Defendants. Accordingly, the burden shifts to Plaintiff to either show that he exhausted his claim or that the administrative remedy was effectively unavailable to him. *Albino*, 747 F.3d at 1172. The facts in the record do not support either finding.

First, Plaintiff has failed to refute Defendants' evidence that he did not complete the administrative grievance process with respect to his religious exercise claim in Count One. The undisputed evidence shows that the only grievance documents Plaintiff submitted regarding the April 8, 2016 incident were the April 10, May 9, May 10, and June 19, 2016 Inmate Letters and Informal Complaint. There is no evidence that Plaintiff exhausted his claim by pursuing it to an appeal to the Director. In fact, Plaintiff concedes that he did not exhaust the available administrative remedies; however, he argues that he never received a response to his timely April 10, 2016 Inmate Letter. (Doc. 90 at 4–6.) Even if this is true, Plaintiff was permitted, under DO 802.01 § 1.10.1, to proceed to the next stage of the grievance process when he did not receive a response to his Inmate Letter, but he did not do so. Instead, he waited an entire month to follow up with a second Inmate Letter.

Second, the evidence does not support a finding that the administrative grievance system was effectively unavailable to Plaintiff. Plaintiff argues that he "ha[s] problems understanding English," and that there was nothing available in Farsi. (Doc. 90 at 8.) Construing this in Plaintiff's favor, Plaintiff's argument still fails to refute Defendants' evidence that the administrative grievance system was available to Plaintiff where the record shows that Plaintiff understood the grievance process enough to file multiple Inmate

Letters and an Informal Complaint regarding the April 8, 2016 incident, all of which he wrote in English.[5]

Absent evidence that Plaintiff attempted to pursue a grievance related to his religious exercise claims and that his attempt to do so was actually thwarted by prison officials, Count One must be dismissed without prejudice for failure to exhaust the available administrative remedy, and GEO Defendants' Motion for Summary Judgment will be granted. *See Lira v. Herrera*, 427 F.3d 1164, 1170 (9th Cir. 2005) (If a court grants summary judgment on non-exhaustion grounds, dismissal is without prejudice).[6]

**IV.  Defendants Ryan and Kent's Motion for Summary Judgment**

In Count Two of the First Amended Complaint, Plaintiff alleges that he has been discriminated against because of his race and/or religion in violation of the Fourteenth Amendment. (Doc. 8 at 13.)

---

[5] Even if the Court considered the evidence in Plaintiff's stricken pleadings (Docs. 93, 94), GEO Defendants would still be entitled to summary judgment. According to Plaintiff's now-stricken amended Statement of Facts, approximately four days after he submitted the April 10, 2016 Inmate Letter, he "spoke to CM. Reed in his office if he had rec[ei]ved a response for me from DW Coday. CM. Reed, said, 'no' he said, come see me a few days from now he should have one." (Doc. 94 (Pl.'s Am. Statement of Facts) ¶¶ 12–13; Doc. 94-1 at 10 (Pl.'s Decl. ¶ 13).) Plaintiff states that when he returned to Reed's office an unspecified number of days later, Commander Reed informed Plaintiff that he still had not received a response from Defendant Coday. (*Id.*) Reed told Plaintiff to wait until Defendant Coday responded to the Inmate Letter "and we will go from there." (*Id.*)

To the extent Plaintiff argues that the grievance process was rendered unavailable to him because Commander Reed told him to wait for a response to the April 10, 2016 Inmate Letter (*see* Doc. 94-1 at 10 (Pl.'s Decl. ¶¶ 12–13)), DO 802.02 § 1.3.2 gives prison officials 15 workdays to respond to informal complaints. Under the DO 802 definition of "workday," the response to Plaintiff's Inmate Letter would not have been due until April 29, 2016. Therefore, even if Reed told Plaintiff to wait for a response to the Inmate Letter, the evidence does not suggest that he advised Plaintiff to wait past the response deadline or to wait indefinitely for a response. Plaintiff has not presented any evidence that he was actually prevented from moving on to the next step of the grievance process the day after the informal complaint response deadline expired.

[6] At screening, the Court found that Plaintiff stated religious exercise claims against Defendants John and Jane Doe Disciplinary Officers in Count One. (Doc. 6 at 11.) The Court advised Plaintiff that it would not order service upon the Doe Defendants, but it would allow Plaintiff an opportunity to discover the identities of the Doe Defendants and amend his complaint to name them. (Doc. 6 at 12.) To date, Plaintiff has not identified or served the Doe Defendants even though this lawsuit was filed over two years ago. In light of the Court's finding that Plaintiff did not fully exhaust his claims in Count One, and because the Doe Defendants are only named in Count One, the Court will also dismiss the Doe Defendants from the action without prejudice.

### A. Equal Protection Legal Standard

The Equal Protection Clause requires that persons who are similarly situated be treated alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, *Committee Concerning Community Improvement v. City of Modesto*, 583 F.3d 690, 702–03 (9th Cir. 2009); *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003), *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591, 601–02 (2008); *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008).

Where religious rights are at issue, a prisoner "'must set forth specific facts showing that there is a genuine issue' as to whether he was afforded a reasonable opportunity to pursue his faith as compared to prisoners of other faiths" and that "officials intentionally acted in a discriminatory manner." *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds* by *Shakur*, 514 F.3d at 884-85. Taking from *Turner v. Safely*, 482 U.S. 78 (1987), the Court must consider whether "the difference between the defendants' treatment of [Plaintiff] and their treatment of [other] inmates is 'reasonably related to legitimate penological interests.'" *Shakur*, 514 F.3d at 891 (citing *DeHart v. Horn*, 227 F.3d 47, 61 (3rd Cir. 2000)).

...
...
...
...
...
...
...

**B.     Relevant Facts**[7]

The following facts are undisputed unless otherwise noted.

Plaintiff is of Middle Eastern descent and identifies as Muslim/Islamic. (Doc. 8 at 13.) On April 26, 2015, Defendant Kent issued Plaintiff a disciplinary ticket because Plaintiff's beard length was out of compliance with ADC grooming standards and he did not have a shaving waiver. (Doc. 83 (Defs.' Statement of Facts) ¶ 4.) On April 30, 2015, Defendant Kent issued Plaintiff another disciplinary ticket for the same reason. (*Id.* ¶ 5.) Plaintiff states that between April 14 and April 30, 2015, Defendant Kent placed him on report for his beard eight times. (Doc. 89 at 24 (Pl.'s Decl. ¶ 9).) However, it appears that many of these were only verbal reprimands as the record shows that Defendant Kent only issued written disciplinary tickets regarding Plaintiff's beard on April 26 and 30, 2015. (*See* Doc. 89-1 at 36–39 (Pl.'s Ex. 12).) On May 5, 2015, Plaintiff received an Inmate Grooming Waiver, which allowed him to wear a beard not to exceed one-quarter inch. (Doc. 83 ¶ 6.) Accordingly, Plaintiff's April 26 disciplinary ticket was informally resolved as a verbal warning and the April 30 disciplinary ticket was dismissed. (*Id.* ¶ 7.)

---

[7] Local Rule of Civil Procedure 56.1(b) provides that a party opposing a motion for summary judgment must submit a statement of facts that cites "to a specific admissible portion of the record where the fact finds support." In opposition to the Motion for Summary Judgment, Plaintiff has submitted a Statement of Facts that contains arguments interspersed throughout the factual statements. (Doc. 89 at 14–21.) Plaintiff attached several exhibits totaling approximately 50 pages to his response, but he does not cite to any of these exhibits in his factual statements. (*See id.* at 14–21, 27–32; Doc. 89-1 at 1–44.) In summary judgment briefing, "[g]eneral references without page or line numbers are not sufficiently specific." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). It is Plaintiff's obligation to oppose Defendants' arguments, and it is not this Court's obligation to attempt to ascertain what arguments Plaintiff is trying to make or to attempt to locate within multiple pages of evidence what evidence Plaintiff believes supports his arguments. *See Orr v. Bank of America*, 285 F.3d 764, 775 (9th Cir. 2002) (internal quotation omitted) ("Judges need not paw over the files without assistance from the parties."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (citation omitted). Plaintiff's wholesale reference to his exhibits without specifying what parts of those documents are relevant to the issues currently before the Court is inadequate. The Court has nonetheless conducted a general review of Plaintiff's exhibits, and, to the extent Plaintiff has cited to specific evidence within his exhibits to support his response, the Court has considered that evidence. However, the Court will not consider any asserted fact if the supporting evidence is not readily found.

On June 23, 2015, Defendant Kent issued Plaintiff a disciplinary ticket after a strip search revealed that Plaintiff had cigarettes in his possession that he received from a visitor during visitation in violation of DO 911.02 § 1.12.2.2.3. (Doc. 83 ¶ 9.) Plaintiff was found guilty and received 30 days of Parole Class III, 20 hours of extra duty, and 30 days of loss of privileges. (*Id.* ¶ 10.)

On October 12, 2015, Defendant Kent was assigned to Cook Unit, Building 1, and he observed Plaintiff gambling with other prisoners in the Building 1 A/B dayroom even though Plaintiff was assigned to the Building 2 C/D dayroom at the time. (*Id.* ¶¶ 13–15.) Pursuant to Post Order #35, § 1.2.2.1, prisoners are not permitted to enter any building or dayroom other than one to which they are assigned. (*Id.* ¶ 16.) When Defendant observed Plaintiff gambling in the Building 1 A/B dayroom, he ordered Plaintiff to stop gambling and to leave the dayroom. (*Id.* ¶ 17.) Approximately 20 minutes later, Defendant Kent observed Plaintiff enter Building 3, and he subsequently found Plaintiff gambling with prisoners in the Building 3 A/B dayroom. (*Id.* ¶¶ 18, 21.) Defendant Kent issued Plaintiff two disciplinary tickets for gambling and for being out of place. (*Id.* ¶¶ 13–22.) Defendant also issued a disciplinary to another prisoner for the same incident; the prisoner was Hispanic and Christian. (*Id.* ¶ 25.) Plaintiff was found guilty of being out of place, and his ticket for gambling was informally resolved as a verbal warning. (*Id.* ¶ 24.)

Plaintiff initiated a grievance claiming that Defendant Kent issued the disciplinary tickets out of a discriminatory intent. (*Id.* ¶ 26.) Pursuant to Arizona Revised Statute § 41-1604(B)(1)(d), Defendant Ryan delegated the duty of investigating and responding to prisoner grievance appeals to the Appeals Hearing Officer. (*Id.* ¶ 31.) The Appeals Hearing Officer submitted his or her response to Deputy ADC General Counsel Glynn, as Defendant Ryan's designee, for signature. (*Id.* ¶ 31.) Defendant Ryan "generally has no involvement in responding to final grievance appeals unless they concern systemic or Department-wide issues and Glynn brings them to his attention." (*Id.* ¶ 32.) Because Plaintiff's grievance appeal regarding his disciplinary tickets was not a systemic issue, it was not brought to Defendant Ryan's attention. (*Id.*) After reviewing Plaintiff's grievance

record, the Appeals Hearing Officer determined that Defendant Kent had good cause for issuing the disciplinary tickets and denied Plaintiff's appeal; Glynn signed the grievance appeal response. (*Id.* ¶¶ 33–34, 44, 48–50.)

According to Plaintiff, while he was housed at ASPC-Eyman, Cook Unit, Defendant Kent made it known to Plaintiff that he "was biased/prejudiced towards people of Middle Eastern descent and Muslims." (Doc. 8 at 14.) Plaintiff states that in early June 2015, Defendant Kent told Plaintiff that "what [Plaintiff's] people did during 9/11/2001 was cowardly and a lot of innocent Americans died." (Doc. 89 at 24 (Pl.'s Decl. ¶ 11.) Plaintiff asserts that on October 12, 2015, he "had permission from CO Bennett to play cards" in the Building 3 A/B dayroom and that he informed Defendant Kent that he had permission to be there. (*Id.* ¶ 16.) Plaintiff also asserts that CO Bennet told him "that CO Kent told her that he was going to issue as many tickets to [Plaintiff] as possible to have [Plaintiff] removed from the yard." (*Id.* ¶ 18.)

**C. Discussion**

**1. Defendant Kent**

In his First Amended Complaint, Plaintiff alleges that Defendant Kent singled him out from other prisoners by issuing him disciplinary tickets because of his race, nationality, and religion. (Doc. 8 at 13.)

Defendants have presented unrefuted evidence that the disciplinary tickets Defendant Kent issued to Plaintiff were justified. There is no evidence that Plaintiff had a valid shaving waiver at the time Defendant Kent placed him on report for his beard length; Defendant Kent wrote the disciplinary tickets on April 26 and 30, 2015, and Plaintiff did not obtain a shaving waiver until May 5, 2015. (Doc. 83 ¶¶ 4–6.) Plaintiff also does not dispute that Defendant Kent caught him bringing cigarettes in from the visitation area in violation of DO 911.02. (*Id.* ¶ 9.) Likewise, it is undisputed that on October 12, 2015, Defendant Kent issued Plaintiff two disciplinary tickets after twice observing Plaintiff gambling in unassigned buildings. (*Id.* ¶¶ 13–22.)

Plaintiff asserts that in June 2015, Defendant Kent made a comment to him blaming Muslims for the September 11, 2001 attacks and that "this shows CO Kent[']s prejudice against 'your people,' (i.e. Muslims), and harassed the plaintiff due to CO Kent[']s classification of 'your people.'" (Doc. 89 at 1.) Accepting as true that Defendant Kent told Plaintiff that Muslims were to blame for the September 11, 2001 attacks, Plaintiff does not dispute that he was in violation of various ADC rules and regulations on each of the occasions that Defendant Kent issued him a disciplinary ticket. Even assuming Plaintiff had CO Bennett's permission to be in the Building 3 A/B dayroom on October 12, 2015, Plaintiff does not claim to have had permission to be in the Building 1 A/B dayroom where Defendant Kent first found him gambling, and CO Bennett's willingness to bend the rules for Plaintiff does not mean that Defendant Kent was required to do so. Plaintiff fails to show that Defendant Kent treated him differently than similarly situated prisoners. On the contrary, the undisputed facts show that when Defendant Kent issued the October 12, 2015 disciplinary tickets to Plaintiff, he also wrote up a Hispanic, Christian prisoner for the same offense. (Doc. 83 ¶ 9; Doc. 89 at 25 (Pl.'s Decl. ¶ 15).) Plaintiff does not claim or present evidence that Defendant Kent failed to enforce the beard length policy, the contraband policy, the prohibition on gambling, or Post Order #35 against non-Muslim and/or non-Middle Eastern prisoners. Assuming Defendant Kent stated that he was going to issue Plaintiff disciplinary tickets until Plaintiff was transferred from the yard, while such a comment is highly unprofessional and inappropriate, there is insufficient evidence to link it to Plaintiff's race or religion where Defendant Kent made this statement four months after his comment regarding the September 11, 2001 attacks.

The record does not show that Plaintiff was not afforded a reasonable opportunity to pursue his faith or that Defendant Kent treated him differently from similarly situated prisoners. Accordingly, summary judgment will be granted to Defendant Kent on Plaintiff's equal protection claim in Count Two.[8]

---

[8] Because summary judgment is being granted to Defendant Kent on the merits, the Court will not address Defendant Kent's qualified immunity argument.

- 12 -

### 2. Defendant Ryan

Defendant Ryan's only involvement with Plaintiff's claim in Count Two was responding to Plaintiff's final grievance appeal regarding Plaintiff's complaints against Defendant Kent. (*See* Doc. 8 at 19.) Plaintiff argues that "Director Ryan has a duty to train his staff. Ryan must show he has a training program on religious har[]assment and that Kent has gone through this training program." (Doc. 89 at 9.) He also argues that "Ryan must have a policy where his grievance staff informs him when a constitutional issue such as this arises and/or there is a possibility one of his officers is not trained properly." (*Id.* at 9–10.)

The Court is not persuaded by Plaintiff's arguments. First, Plaintiff did not allege a failure-to-train claim against Defendant Ryan in his First Amended Complaint, so the Court will not consider that portion of Plaintiff's argument. Second, the unrefuted evidence shows that Defendant Ryan was permitted by state law to delegate his responsibility of responding to grievance appeals, and he delegated this duty to the Appeals Hearing Officer for review and response and to General Counsel Glynn for signature. (Doc. 83 ¶ 31.) Third, Defendant Ryan was not personally involved with, or made aware of, Plaintiff's grievance, and there is no evidence that Defendant Ryan's policy of delegating his responsibility of responding to grievance appeals resulted in a violation of Plaintiff's constitutional rights. The response to Plaintiff's grievance appeal indicates that Plaintiff's allegations against Defendant Kent and Plaintiff's lower-level grievances were reviewed, and it was determined there was insufficient evidence to substantiate Plaintiff's grievance against Defendant Kent. (Doc. 83-1 at 64.) There are no facts to suggest that the Appeals Hearing Officer/Glynn's response to Plaintiff's appeal was unreasonable or that it amounted to a constitutional violation. On these facts, Plaintiff fails to create a genuine issue of fact that he was harmed due to Defendant Ryan's conduct. Accordingly, the Court will grant summary judgment to Defendant Ryan on Plaintiff's equal protection claim in Count Two.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants Kent and Ryan's Motion for Summary Judgment (Doc. 82); GEO Defendants' Motion for Summary Judgment (Doc. 84); and Defendants' Motion to Strike (Doc. 95).

(2) Defendants' Motion to Strike (Doc. 95) is **granted**, and the Clerk of Court must **strike** Plaintiff's untimely Amended Response (Doc. 93) and Statement of Facts (Doc. 94) from the record.

(3) Defendants Kent and Ryan's Motion for Summary Judgment (Doc. 82) is **granted** and Count Two of the First Amended Complaint is **dismissed with prejudice**.

(4) GEO Defendants' Motion for Summary Judgment (Doc. 84) is **granted** and Count One of the First Amended Complaint is dismissed **without prejudice** for failure to exhaust the available administrative remedies.

(5) There being no claims remaining, the Clerk of Court must terminate the action and enter judgment accordingly.

Dated this 15th day of August, 2019.

James A. Teilborg
Senior United States District Judge